

FILED
2013 NOV 22 A 10:31
MARY PANKEY, CIRCUIT CLERK
BY ____ DEPUTY

IN THE CIRCUIT COURT OF MILLER COUNTY, ARKANSAS

MICHAEL LAREY and
TONI LAREY, Individually and on behalf of
All others similarly situated

PLAINTIFFS

vs. CASE NO. 46CV-13-283-2

ALLSTATE PROPERTY AND
CASUALTY COMPANY

DEFENDANT

## CLASS ACTION COMPLAINT

Comes now Plaintiffs Michael Larey and Toni Larey, individually and on behalf of all others similarly situated, and for their Class Action Complaint against Defendant Allstate Property and Casualty Company ("Allstate") state and allege the following:

### Parties

1. Plaintiffs are individual residents of Miller County, Arkansas.

2. Defendant Allstate is a foreign corporation conducting business in the State of Arkansas with its principal place of business in Northbrook, Illinois. According to records maintained by the Arkansas Secretary of State, Allstate can be served with process through its registered agent in the State of Arkansas: The Corporation Company, 124 West Capitol Avenue, Suite 1900, Little Rock, AR 72201. In addition, pursuant to Ark. Code Ann. § 4-20-113, Allstate can be served with process by registered or certified mail, return receipt requested, addressed to one or more of the governors of the entity by name at its principal place of business.

## Jurisdiction and Venue

3. This Court has subject matter jurisdiction over this action because the amount in controversy exceeds the minimum jurisdictional limits of the Court. Defendant is not an Arkansas citizen for purposes of federal court diversity analysis. However, no individual Plaintiff's or Class Member's claim is equal to or greater than $75,000.00, inclusive of costs and attorneys' fees. Moreover, the total damages of Plaintiffs and Class Members, inclusive of costs and attorneys' fees, does not exceed $5,000,000.00.

4. This Court has personal jurisdiction over Defendant pursuant to Arkansas Code Annotated § 16-4-101 as Defendant has had more than minimum contact with the State of Arkansas and has availed itself of the privilege of conducting business in this state. In addition, as explained below, Defendant has committed affirmative acts within the State of Arkansas that give rise to civil liability.

5. Venue is proper in this forum pursuant to Ark. Code Ann. §§ 16-55-213(a) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this county.

## Factual Background

6. Plaintiffs Michael Larey and Toni Larey ("Lareys") contracted with Defendant for an insurance policy providing coverage for certain losses to a dwelling and other structures owned by the Lareys and located at 1902 Roberts, Texarkana, Arkansas 71854. At all times relevant to this action the Lareys' property was insured under Allstate Policy No. 000921273205, which was issued by Defendant

7. On or about March 31, 2008, at a time when the above-described insurance policy was in full force and effect, the Lareys suffered a covered loss to their property. They timely

submitted a claim to Defendant requesting payment for their covered loss.

8. Defendant subsequently confirmed that the Lareys had sustained a covered loss to their property, and that Defendant was contractually obligated to pay the Lareys' claim for their covered loss pursuant to the terms of their insurance policy.

9. On or about April 10, 2008, Defendant sent an adjuster to inspect the damage to the Lareys' property. As set forth in a written estimate and correspondence to the Lareys dated that same day, Defendant's adjuster determined the Lareys had suffered a covered loss in the amount of $16,582.34. The estimate included the cost of materials and labor required to complete the repairs. A copy of the estimate and correspondence sent to the Lareys is attached as Exhibit "A."

10. In calculating its payment obligations to the Lareys, Defendant subtracted from the adjuster's replacement cost estimate the $500.00 deductible provided for in the policy plus an additional $6714.43 for depreciation. The Lareys then received a net payment of $9367.91 on their claim.

11. The estimate upon which the Lareys' payment was based indicates that Defendant depreciated both material costs and labor costs associated with repairs to the dwelling. For example, Defendant estimated the cost of repairing damage to the roof of the Lareys' dwelling at $4788.00. Defendant then depreciated the total replacement cost estimate, which includes both materials and labor, by $1966.83 to arrive at what it designates as an "ACV," *i.e.* actual cash value, of $2821.17. Similarly, Defendant estimated the total cost of repairing damage to the roof of the Lareys' storage building at $5938.72. Defendant depreciated the cost of both materials and labor by $4001.39 to arrive at an ACV of $1937.33.

**Policy Terms and Claims Settlement Practices**

12. The policies of insurance Defendant issued to Plaintiffs and other members of the proposed class provide replacement cost value ("RCV") coverage for both total loss of and partial loss to covered dwellings and other structures.

13. At all times relevant to this cause of action, Defendant's custom and practice has been to pay its RCV policy holders the actual cash value ("ACV") of covered partial loss claims, net of any applicable deductible. In order to qualify for additional payment and recover the full RCV of the covered loss, the insured party must repair, rebuild or replace the damaged property within a specified time frame and submit proof to Defendant that the repair or replacement was timely completed. Costs that exceed the amount of the ACV payment are the responsibility of the policy holder.

14. At all times relevant hereto, Defendant's methodology for calculating ACV has been to determine the cost of repairing or replacing the damaged property, then deduct depreciation.

15. Arkansas law permits an insurer to depreciate physical assets, *i.e.* materials used to repair or replace damaged property, when determining the ACV of a covered claim. However, an insurer may *not* depreciate labor costs associated with such repair or replacement.

16. In the context of insurance law, "depreciation" is defined as "[a] decline in *an asset's value* because of use, wear, obsolescence, or age." BLACK'S LAW DICTIONARY 506 (9th ed. 2009) (emphasis added). Materials used in the repair or replacement of damaged property *e.g.* roofing shingles, diminish in value over time due to use, wear, obsolescence, and age. As such, these are assets that can be depreciated. In contrast, labor is not susceptible to aging or wear. Its value does not diminish over time. Conceptually, and practically, depreciation simply

cannot be applied to labor costs.

17. The Arkansas Insurance Department ("AID") recently issued a Bulletin clarifying its position regarding the depreciation of labor in claims made on policies with ACV loss settlement provisions. In Bulletin 13A-2013 the AID stated unequivocally that "**Labor of any kind related to the repair, rebuild, or replacement of covered property cannot be depreciated.**" (emphasis in original) In issuing the clarification, the AID emphasized that this "is not a new Department position." Rather, it is recognition, consistent with longstanding legal principles, that materials are subject to depreciation while labor is not.

18. The position of the AID is also consistent with the universally accepted premise that the basic purpose of property insurance is to provide indemnity to policy holders. To indemnify means to put the insured back in the position he or she enjoyed before the loss - no better and no worse. A policy that provides for payment of the ACV of a covered loss is an indemnity contract because the purpose of the ACV payment is to make the insured whole but not to benefit him or her because a loss occurred. *See* APPLEMAN ON INSURANCE 2D § 3823. An RCV policy expands the basic concept of indemnity to include coverage for repair and replacement costs that exceed the ACV of the loss.

19. In order to recover the RCV of their covered loss, Plaintiffs and other Class Members are required to pay out of pocket the difference between the cost of materials and labor necessary to repair or replace the damaged property and the depreciated ACV payment they received from Defendant. While an insurer may lawfully depreciate material costs in calculating the amount of an ACV payment owed to an insured, it may not depreciate labor costs. Defendant's failure to pay the full cost of the labor necessary to repair or replace Plaintiffs' damaged property in the ACV payment left Plaintiffs under-indemnified and underpaid for their

losses.

20. Defendant materially breached its duty to indemnify Plaintiffs by depreciating labor costs associated with repairs to Plaintiffs' property in the ACV payment, thereby paying Plaintiffs less than what they were entitled to receive under the terms of their insurance contracts.

**Class Action Allegations**

21. Pursuant to Arkansas Rule of Civil Procedure 23, Plaintiffs bring this lawsuit as a class action on behalf of themselves and all others similarly situated. This action satisfies the ARCP 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation, and the Rule 23(b) requirements of predominance and superiority.

22. The proposed Class which Plaintiffs seek to represent is defined as follows:

> All persons and entities that received "actual cash value" payments, directly or indirectly, from Allstate for loss or damage to a dwelling or other structure located in the State of Arkansas, such payments arising from events that occurred within the ten years preceding the date of filing of this Class Action Complaint, where the cost of labor was depreciated. Excluded from the Class are: (1) all persons and entities that received payment from Allstate in the full amount of insurance shown on the declarations page; (2) Allstate and its affiliates, officers, and directors; (3) members of the judiciary and their staff to whom this action is assigned; and (4) Plaintiff's counsel.

23. The members of the Class are so numerous that joinder of all members is impracticable. Plaintiffs reasonably believe that hundreds if not thousands of people geographically dispersed across Arkansas have been damaged by Defendant's actions. The names and addresses of the members of the Class are identifiable through records maintained by Defendant, and Class Members may be notified of the pendency of this action by mailed, published and/or electronic notice.

24. Common questions of law and fact exist as to all Class Members and predominate over any questions affecting only individual Class Members. The questions of law and fact

common to the Class include, but are not limited to:

A. Whether Defendant's insurance policies allow Defendant to depreciate labor in calculating ACV payments for covered losses;

B. Whether Defendant's insurance policies are ambiguous concerning the depreciation of labor costs in calculating ACV payments, and if so, how Defendant's insurance policies should be interpreted;

C. Whether Defendant's depreciation of labor costs in making ACV payments for covered losses is a breach of the insurance contracts issued by Defendant to Plaintiffs and other Class Members;

D. Whether Plaintiffs and other Class Members have been damaged by Defendant's breaches, as alleged herein, and if so:

1. What is the nature and extent of those damages; and

2. What relief should be awarded to Plaintiffs and other Class Members; and

E. Whether Defendant has been unjustly enriched by retaining money that should have been paid to Plaintiffs and other Class Members.

25. Plaintiffs' claims are typical of the claims of all Class Members, as they are all similarly affected by Defendant's custom and practice of unlawful and unjust conduct and their claims are based on such conduct. Further, Plaintiffs' claims are typical of the claims of all Class Members because their claims arise from the same underlying facts and are based on the same factual and legal theories. Plaintiffs are no different in any material respect from any other member of the Class.

26. Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the Class. Plaintiffs' interests do not conflict with the interests of the Class they seek to represent. Plaintiffs have retained counsel who are competent and experienced in class action litigation, including insurance-related cases. Plaintiffs and their counsel will prosecute this action vigorously.

27. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Joining all Class Members in one action is impracticable and prosecuting individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most Class Members, a class action is the only procedural mechanism that will afford them an opportunity for legal redress and justice. Even if Class Members had the resources to pursue individual litigation, that method would be unduly burdensome to the courts in which such cases would proceed. Individual litigation exacerbates the delay and increases the expense for all parties, as well as the court system. Moreover, individual litigation could result in inconsistent adjudications of common issues of law and fact.

28. In contrast, a class action will minimize case management difficulties and provide multiple benefits to the litigating parties, including efficiency, economy of scale, unitary adjudication with consistent results and equal protection of the rights of each Plaintiff and Class Member. These benefits would result from the comprehensive and efficient supervision of the litigation by a single court.

29. Class certification is further warranted because Defendant has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

**Fraudulent Concealment**

30. At all times relevant to the allegations set forth herein, Defendant owed a fiduciary duty to, and/or had a special relationship with, Plaintiffs and other Class Members.

31. Throughout the claims process, Plaintiffs and other Class Members asked Defendant to pay them what they were entitled to receive as the ACV of their covered losses

under the terms of their insurance policies. Defendant represented to Plaintiffs and other Class Members that their ACV payments were the full amount owed under their policies and that no additional money was owed.

32. Plaintiffs and other Class Members justifiably and reasonably relied upon Defendant's representations that they had received all they were entitled to recover as ACV payments from Defendant under the terms of their policies.

33. Defendant had a duty to disclose to Plaintiffs and other Class Members that they were entitled to recover the full cost of labor necessary to repair or replace their property in their ACV payments. Defendant not only failed to disclose this information, it acted in a manner designed to conceal it from Plaintiffs and other Class Members. Because of Defendant's actions, Plaintiffs and other Class Members could not have known they had been underpaid on their claims through the exercise of due diligence.

34. Defendant's fraudulent concealment tolls the running of any statute of limitations that may otherwise be applicable to the claims for relief asserted herein.

## Causes of Action

### Count I - Breach of Contract

35. Plaintiffs hereby incorporate by reference all preceding paragraphs as if fully set forth herein.

36. Defendant entered into policies of insurance with Plaintiffs and other members of the proposed Class. These policies govern the relationship between Defendant, Plaintiffs and other Class Members, as well as the manner in which claims for covered losses are handled.

37. The insurance policies at issue were drafted by Defendant and are essentially identical in all respects material to this litigation.

38. Plaintiffs and other Class Members complied with all material provisions and fulfilled their respective duties with regard to their policies.

39. The policies of insurance Defendant issued to Plaintiffs and other members of the proposed class state that in the event of a partial loss Defendant may fulfill its initial contractual obligation to an insured party by paying the ACV of the loss. At all times relevant hereto, Defendant's custom and practice has been, and is, to make such payments based upon Defendant's calculation of the ACV for the partial loss, net of any applicable deductible.

40. Defendant breached its contractual duty to pay Plaintiffs and other Class Members the ACV of their claims by unlawfully depreciating labor costs.

41. Defendant's actions in breaching its contractual obligations to Plaintiffs and other Class Members benefitted, and continue to benefit, Defendant. Likewise, Defendant's actions damaged, and continue to damage, Plaintiffs and other Class Members.

42. Defendant's actions in breaching its contractual obligations, as described herein, are the direct and proximate cause of damages to Plaintiffs and other Class Members.

43. In light of the foregoing, Plaintiffs and other Class Members are entitled to recover damages sufficient to make them whole for all amounts Defendant unlawfully withheld from their ACV payments as labor cost depreciation.

**Count II – Unjust Enrichment**

44. Plaintiffs hereby incorporate by reference all preceding paragraphs as if fully set forth herein.

45. Defendant's conduct as described above, and as more specifically alleged in this Count, also constitutes unjust enrichment, for which Plaintiffs and other Class Members are entitled to pursue equitable remedies in accordance with Arkansas law.

46. Defendant made payments to Plaintiffs and other Class Members for covered losses to their property which ostensibly represented the ACV of their claims, net of deductibles. However, in calculating the ACV of such claims, Defendant wrongfully depreciated labor costs. As a result, the payments Plaintiffs and other Class Members received were less than the true ACV of their claims.

47. Defendant's actions were unjust and inequitable in that it paid Plaintiffs and other Class Members less than they were entitled to receive for their claims.

48. Defendant's actions were unjust and inequitable in that Defendant failed to disclose to Plaintiffs and other Class Members that they were receiving less than the true ACV of their claims.

49. Defendant's actions were unjust and inequitable in that Defendant concealed from Plaintiffs and other Class Members that they were receiving less than the true ACV of their claims.

50. Defendant's actions were unjust and inequitable in that Defendant owed a fiduciary duty to, and/or had a special relationship with, Plaintiffs and other Class Members.

51. As a result of its unjust and inequitable actions, Defendant was unjustly enriched by receiving something of value it was not entitled to. More specifically, Defendant retained, and had the beneficial use of, money that Plaintiffs and other Class Members were entitled to and should have received in payment of their claims.

52. As a result of its unjust and inequitable actions, Defendant was unjustly enriched by receiving money under such circumstances that, in equity and good conscience, it ought not to retain.

53. In light of the foregoing, Plaintiffs and other Class Members are entitled to restitution and other equitable relief.

**Prayer for Relief**

WHEREFORE, Plaintiffs William Keller, Debra Keller and Peggy Byrge, individually and on behalf of others similarly situated, request that the Court grant them the following relief:

A. Certify that this lawsuit may be prosecuted as a Class Action pursuant to Rule 23 of the Arkansas Rules of Civil Procedure;

B. Appoint Plaintiffs and Plaintiffs' counsel to represent the Class;

C. Declare that Defendant has breached its contractual obligations to the Class by depreciating labor costs;

D. Declare that Defendant has been unjustly enriched as the result of its wrongful conduct;

E. Award the Class damages in an amount equal to the total amount of depreciated labor costs withheld on Class Members' claims;

F. Award the Class additional damages in the amount of twelve percent (12%) of the depreciated labor costs recovered pursuant to Ark. Code Ann. § 23-79-208;

G. Award the Class prejudgment and post-judgment interest;

H. Enjoin Defendant from engaging in the unlawful and unjust conduct complained of herein;

I. Award the Class reasonable attorneys' fees and costs; and

J. Afford the Class any and all additional relief to which Plaintiffs and other Class Members may prove themselves entitled.

Respectfully submitted,

MICHAEL GOODNER and ROBBIE GOODNER, Individually and on behalf of others similarly situated, PLAINTIFFS

By: Matt Keil

MATT KEIL, #86099
JOHN C. GOODSON, #90018
**KEIL & GOODSON, P.A.**
406 Walnut Street
Texarkana, AR 71854
Telephone: (870) 772-4113
Facsimile: (870) 773-2967

**Counsel for Plaintiffs and the Proposed Class**

# EXHIBIT A



Allstate.
You're in good hands.

National
Catastrophe Team

Date: 4/10/08

Our Insured: Larry

Date of Loss: 4/1/08

Claim Number: 109259192

This will confirm our recent conversation. As we discussed, your policy provides payment under the following coverage(s), ☑ "Dwelling Protection Coverage A" ☑ "Other Structure Protection Coverage B" ☐ "Personal Property Protection Coverage C" for the actual cash value of damaged or destroyed item(s) subject to the limit of liability on your policy.

The following summarizes the calculations we talked about:

| | DWELLING | OTHER STRUCTURES | CONTENTS |
|---|---|---|---|
| Full Cost Of Repair Or Replacement | $ 10,557.62 | $ 6,046.31 | $ |
| Taxes | $ 491.89 | $ 248.36 | $ |
| Recoverable Depreciation | $ 2,713.04 | $ 4,001.35 | $ |
| Non-recoverable Depreciation | $ 0 | $ 21.59 | $ |
| Actual Cash Value | $ 7,844.58 | $ 2,023.33 | $ |
| Less Deductible | $ 500 | $ 0 | $ |
| Amount Paid This Date | $ 7,344.58 | $ 2,023.33 | $ |

Allstate strives to fairly adjust all claims and resolve any disagreements as quickly as possible. A check in the amount of $ 6,714.43 that represents the amount payable under your Allstate policy is enclosed or will be sent to you separately. Also enclosed is a copy of the worksheet prepared on your loss that further explains the settlement. If you have any questions, please call 1-800-547-8676 for assistance.

To recover an amount in excess of the actual cash value, you must repair, rebuild, or replace the damaged property within 180 days of our payment. Please send all receipts indicating that the repair or replacement has been completed within the 180-day period.

Allstate Insurance Company

Allstate Insurance Company
P.O. Box 94054 Palatine, IL 60094-0000 T 800.806.5570 ext. 12020 F 888.859.3946

VICHAEL IAN & TOM LAFEY
EK2 ROBRR SC
TEXARKANA AR 71854-7530

CWC2K3

NITAS, LUEY & TOTIARE,

ENJCST T6 SEND PATONE ID DOMNT (FS) AND CRECDIT OST RM AN HAS SS
CNSEDXR.

EVASI RBEUNT IAN XJALSBCA

CLAIM NUMBER: 002KL2
IACT DATE: 0A120
INSURED: IXDIARS

I. aretkr Owe g ak (te inxre R: Arlson is LIcsci MN7X.

ALSTATE IRDENY AND CASUALTY INSURANCE COMPANY
18C2E7E3

--- CXX20C0X035Z 002 10 003 8

# Your guide to reading your adjuster summary.

## Adjuster Summary

Allstate # 1234567890 (A)

**Allstate Insurance-National Catastrophe Team**

| | | |
|---|---|---|
| Adjuster<br>Phone<br>FAX | P.O. Box 94054<br>Palatine, IL 60094<br>Phone (800) 547-8676 Fax (888) 859-3249 | September 01, 2006 |

| | | | | |
|---|---|---|---|---|
| Insured Name | Smith, John | | | |
| Loss Address | 1234 Oak Street, Anywhere, GA 12345 | | | |
| Phone Number | (123) 555-5555 | Policy # 000000123456789 | Catastrophe # | A010106 |
| Other Phone | | Ins Claim # 1234567890 | Date of Loss | 1/2/2006 |
| Ins Company | ALLSTATE INSURANCE COMPANY | | | |

**AA – Dwelling (B)**

**Roof (C)**

| (D) | (E) Sup | (F) Repl. Cost | (G) Depr. | (H) ACV | (I) OP | (J) RD |
|---|---|---|---|---|---|---|
| Remove Ridge Shingles, Asphalt | 60 LF @ $0.31* | $19.03 | $0.00 | $19.03 | | |
| Replace Ridge Shingles, Asphalt | 50 LF @ $1.41* | $70.50 | $14.10 | $56.40 | | |
| Remove Asphalt Shingles, 3 Tab, 25 YR | 25 SQ @ $20.67* | $516.76 | $0.00 | $516.76 | | |
| Replace Asphalt Shingles, 3 Tab, 25 YR | 27 SQ @ $76.49* | $2,065.23 | $413.05 | $1,652.18 | | |
| Roof Total | (K) | $2,671.48 | $427.15 | $2,244.33 | | |

**Exterior**

| | Sup | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|---|
| Remove Window Awning (SF), Aluminum | 16 SF @ $0.78* | $12.48 | $0.00 | $12.48 | | |
| Replace Window Awning (SF), Aluminum | 16 SF @ $23.38* | $374.08 | $74.82 | $299.26 | | N |
| Exterior Total | | $386.56 | $74.82 | $311.74 | | |

**Pool Enclosure**

| | Sup | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|---|
| Tear Out Screen Enclosure, Pool | 1622 SF @ $0.21* | $340.62 | $0.00 | $340.62 | | |
| Replace Screen Enclosure, Pool | 1622 SF @ $11.74* | $19,042.28 | $3,808.48 | $15,233.81 | | |
| Pool Enclosure Total | | $19,382.90 | $3,808.48 | $15,574.41 | | |

**Master Bedroom (16' x 12' x 8')**

192 sf Floor 448 sf Wall 192 sf Ceiling 640 sf Floor 517 Ceiling 1,536 cf Volume

| | Sup | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|---|
| Tear Out Drywall, Ceiling ½", Taped | 192 SF @ $0.12* | $23.04 | $0.00 | $23.04 | | |
| Replace Drywall, Ceiling, ½", Taped | 201.6 SF @ $0.78* | $157.25 | $31.75 | $125.48 | | |
| Paint Ceiling, 2 Coats, Average | 201.6 SF @ $0.37* | $71.04 | $0.00 | $121.19 | | |
| Master Bedroom Total | | $251.33 | $31.75 | | | $219.57 |

**Unscheduled Personal Property**

**Bedroom**

| | Sup | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|---|
| Replace Box Spring | 1 EA @ $300.00* | $300.00 | $0.00 | $300.00 | N | N |
| Unscheduled Personal Property Totals | | $300.00 | $0.00 | $300.00 | | |

**Summary**

| | Repl. Cost | Depr. | ACV |
|---|---|---|---|
| Estimate Totals | $22,992.27 | $4342.19 | $18,650.08 |
| Less Amount Not Subject To Overhead & Profit | -$300.00 | $0.00 | -$300.00 |
| Amount Subject To Overhead & Profit | $22,692.27 | $4342.19 | $18,350.08 |
| (L) Contractor's Overhead & Profit (20%) | $4,431.20 | $1259.23 | $3321.97 |
| Sub-Total | $29,273.47 | $5601.42 | $23,672.05 |
| Amount Not Subject To Overhead & Profit | $300.00 | $0.00 | $300.00 |
| Total With Overhead & Profit | $29,573.47 | $5601.42 | $23,972.05 |
| (M) Sales Tax 7.00% | $1,378.90 | $271.81 | $1,107.09 |
| Total With Tax (N) | $33,952.37 | $5873.23 | $25,079.14 |
| Less Non-Recoverable Depreciation | -$96.62 | -$96.62 | |
| Sub-Total | $33,855.85 | $5776.71 | $25,079.14 |
| (O) Less Deductible Applied | -$500.00 | | -$500.00 |
| (P) Net Claim | $33,355.85 | $5776.71 | $24,579.14 |

LF = Linear Feet SQ = 100 Square Feet SF = Square Feet SY = Square Yard EA = Each

**A. CLAIM NUMBER**
The claim number assigned to your loss.

**B. INVOLVED COVERAGE**
The involved policy coverage for the damaged area

**C. DAMAGE LOCATION**
The area that has been damaged, includes size of area when appropriate

**D. REPAIR OR REPLACE ACTIONS**
Outlines the repairs and/or replacement materials, and actions

**E. SUPPLEMENT**
Number indicates actions or material changes to the prior summary

**F. REPLACEMENT COST**
Cost to repair or replace damages

**G. DEPRECIATION**
The decrease of the property's value due to age, life expectancy, wear and tear (condition), and obsolescence, which may be recoverable upon replacement, if applicable to your policy

**H. ACTUAL CASH VALUE**
The amount needed to repair or replace damages minus the depreciation

**I. OVERHEAD AND PROFIT**
If marked with an "N," excluded from line item

**J. RECOVERABLE DEPRECIATION**
If marked with an "N," the amount withheld under Depreciation (G) is not recoverable per policy provisions

**K. DAMAGE LOCATION TOTALS**
Total before adding applicable taxes and overhead and profit

**L. CONTRACTOR'S OVERHEAD AND PROFIT**
Contractor's cost of doing business

**M. SALES TAX**
Based on where the loss occurred

**N. TOTAL WITH TAX**
The total estimate with applicable tax and overhead and profit

**O. LESS DEDUCTIBLE APPLIED**
Reflects the applicable policy deductible

**P. NET CLAIM**
The total replacement cost less depreciation, deductible and prior payments equals the ACV amount for settlement check

©2007 Allstate Insurance Company, allstate.com 04/07
D9. 42



# Adjuster Summary

Claim # 000109259192

## Allstate Insurance-National Catastrophe Team

Adjuster
CALEB YEAGER PLT
Phone
Fax

P.O. Box 94054
Palatine, IL 60094
Phone (800) 547-8676 Fax (888) 859-3946

April 10, 2008

Insured Name LARBY, TONI
Loss Address 1902 ROBERTS, TEXARKANA, AR 718547650
Phone Number (870) 774-0316
Other Phone
Policy # 000921273205
Ins Claim # 000109259192
Catastrophe # 0331200804
Date of Loss 3/31/2008
Ins Company ALLSTATE PROPERTY AND CASUALTY INSURANCE COMP

## AA - ROOF

**Roof**

2,908 sf Roof

Main Area 18' 8" x 24' 7" (2) 16' 2" x 39' 9" (2) 18' x 19' 7" (2)

| | | Repl. Cost | | Depr. | ACV OP RD |
|---|---|---|---|---|---|
| Remove Shingles, 3-Tab, Fiberglass, 20 YR | 29.08 SQ @ $14.97 a | $435.33 | | $0.00 | $435.33 |
| Replace Shingles, 3-Tab, Fiberglass, 20 YR | 31.67 SQ @ $36.64 b | $1,160.39 | Material | | |
| | 29.33 SQ @ $18.90 | $554.34 | Labor | | |
| | | $1,714.73 | | $960.25 | $754.48 |

RECOVERABLE DEPERCIATION TAKEN BASED ON THE AGE OF THE MATERIAL IN YEARS ON THE MSB SYSTEM.

| | | Repl. Cost | | Depr. | ACV OP RD |
|---|---|---|---|---|---|
| Replace Felt, #15, 15 LB | 31.41 SQ @ $3.49 b | $109.62 | Material | | |
| | 29.08 SQ @ $4.10 | $119.23 | Labor | | |
| | | $228.85 | | $171.64 | $57.21 |
| Remove Drip Edge, Galvanized, 5" | 258 LF @ $0.16 a | $41.28 | | $0.00 | $41.28 |
| Replace Drip Edge, Galvanized, 5" | 258 LF @ $0.57 b | $147.06 | | $110.30 | $36.76 |
| Replace Ridge Cap, Fiberglass | 101 LF @ $1.89 a | $190.89 | | $66.81 | $124.08 |
| Remove Collar, Vent Stack | 7 EA @ $2.77 a | $19.39 | | $0.00 | $19.39 |
| Replace Collar, Vent Stack | 7 EA @ $12.73 a | $89.11 | | $49.90 | $39.21 |
| Remove Roof Vent, Turbine, Medium | 2 EA @ $3.01 a | $6.02 | | $0.00 | $6.02 |
| Replace Roof Vent, Turbine Medium | 2 EA @ $88.84 a | $177.68 | | $99.50 | $78.18 |
| Remove Vent Cap, Plumbing, 5" Metal | 3 EA @ $2.65 a | $7.95 | | $0.00 | $7.95 |
| Replace Vent Cap, Plumbing, 5" Metal | 3 EA @ $10.78 a | $32.34 | | $18.11 | $14.23 |
| Remove Valley Flashing, Galvanized Steel | 30 LF @ $0.52 a | $15.60 | | $0.00 | $15.60 |
| Replace Valley Flashing, Galvanized Steel | 30 LF @ $1.88 b | $56.40 | | $42.30 | $14.10 |
| Special Cleanup & Removal | 7.27 HR @ $16.24 a | $118.06 | | $0.00 | $118.06 |
| Special Dumpster, 30 Yard | 1 EA @ $431.45 a | $431.45 | | $0.00 | $431.45 |

DEBRIS REMOVAL FOR BOTH BUILDINGS.

| | Repl. Cost | Depr. | ACV OP RD |
|---|---|---|---|
| AA - ROOF Totals | $3,712.14 | $1,518.81 | $2,193.33 |

## AA - Dwelling

Exterior

| | | Repl. Cost | Depr. | ACV OP RD |
|---|---|---|---|---|
| Remove Gutter, Seamless | 100 LF @ $0.62 a | $62.00 | $0.00 | $62.00 |
| Replace Gutter, Seamless | 100 LF @ $3.61 a | $361.00 | $51.57 | $309.43 |
| Remove Downspout, Galvanized, 5" | 21 LF @ $0.33 a | $6.93 | $0.00 | $6.93 |
| Replace Downspout, Galvanized, 5" | 21 LF @ $3.09 a | $64.89 | $7.21 | $57.68 |
| Special Cleanup & Removal | 6.05 HR @ $16.24 a | $98.25 | $0.00 | $98.25 |
| Remove Fascia, Aluminum, 6" | 56 LF @ $0.29 a | $16.24 | $0.00 | $16.24 |
| Replace Fascia, Aluminum, 6" | 56 LF @ $2.87 a | $160.72 | $16.07 | $144.65 |
| Special Cleanup & Removal | 1 HR @ $16.24 a | $16.24 | $0.00 | $16.24 |
| | Exterior Total | $786.27 | $74.85 | $711.42 |

Rear Porch (19' 8" x 12' 1" x 8')

238 sf Floor | 508 sf Wall | 238 sf Ceiling | 64 lf Floor | 64 lf Ceiling | 1,901 cf Volume

| | | Repl. Cost | Depr. | ACV OP RD |
|---|---|---|---|---|
| Remove Patio Cover w/Gutters, Excellent | 238 SF @ $0.39 a | $92.82 | $0.00 | $92.82 |
| Replace Patio Cover w/Gutters, Excellent | 238 SF @ $14.49 a | $3,448.62 | $492.66 | $2,955.96 |
| Special Dump Truck, 20 Yard | 1 LD @ $77.68 a | $77.68 | $0.00 | $77.68 |
| | Rear Porch Total | $3,619.12 | $492.66 | $3,126.46 |
| | AA - Dwelling Totals | $4,405.39 | $567.51 | $3,837.88 |

## Appurt Structures ROOF

Roof

2,714 sf Roof

Main Area 15' 6" x 58' 2" (2) 15' 8" x 58' 2"

| | | Repl. Cost | Depr. | ACV OP RD |
|---|---|---|---|---|
| Tear Out Corrugated Roofing, Steel, 28 ga., Galvanized | 27.14 SQ @ $13.86 a | $376.16 | $0.00 | $376.16 |
| Replace Corrugated Roofing, Steel, 28 ga., Galvanized | 29.32 SQ @ $97.63 a | $2,862.51 Material | | |
| | 27.14 SQ @ $45.83 | $1,243.83 Labor | | |
| | | $4,106.34 | $3,079.76 | $1,026.58 |
| Special Cleanup & Removal | 6.79 HR @ $16.24 a | $110.27 | $0.00 | $110.27 |
| | Appurt Structures ROOF Totals | $4,592.77 | $3,079.76 | $1,513.01 |

## Appurt Structures

Exterior

| | | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|---|
| Remove Mailbox & Post | 1 BA @ $5.20 a | $5.20 | $0.00 | $5.20 | | |
| Replace Mailbox & Post | 1 BA @ $61.56 a | $61.56 | $16.42 | $45.14 | | N |
| NONRECOVERABLE DEPERCIATION TAKEN BASED ON THE AGE OF THE MATERIAL IN YEARS ON THE MSB SYSTEM. | | | | | | |
| Special Cleanup & Removal | 1 HR @ $16.24 a | $16.24 | $0.00 | $16.24 | | |
| | Appurt Structures Totals | $83.00 | $16.42 | $66.58 | | |

## Summary

| | Repl. Cost | Depr. | ACV |
|---|---|---|---|
| Estimate Totals | $12,793.30 | $5,182.50 | $7,610.80 |
| Contractor's Overhead & Profit (24%) | $3,070.38 | $1,243.79 | $1,826.59 |
| Total With Overhead & Profit | $15,863.68 | $6,426.29 | $9,437.39 |
| Sales Tax 8.50% | $740.25 | $309.73 | $430.52 |
| Total With Tax | $16,603.93 | $6,736.02 | $9,867.91 |
| Less Non-Recoverable Depreciation | ($21.59) | ($21.59) | |
| Sub-Total | $16,582.34 | $6,714.43 | $9,867.91 |
| Less Deductible Applied ($500.00 Maximum) | ($500.00) | | ($500.00) |
| **Net Claim** | $16,082.34 | $6,714.43 | $9,367.91 |

Items noted as such by the Price Database Legend at the bottom of this estimate were based on material pricing provided by and available at large building material suppliers in your local market. It should be noted that prices can change without notice. Allstate will honor this estimate and work with you to resolve your claim regardless of where you purchase your materials and services. If you find the cost of repairs or replacement is more than reflected in this estimate, please contact your claim adjuster at the number listed above.

PLEASE NOTE: "Actual Cash Value is defined as the amount it would take to repair or replace damage to your property less depreciation. Depreciation, when applied in this estimate, is the decrease of the property's value due to age, wear and tear (condition) or obsolescence, except where otherwise noted."

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

Price Database Legend
a = MSB Cost Data SS07C1002.
b = MSB Cost Data SS07C1002. (Home Improvement Ret Material)

# Claim Summary

Claim # 000109259192

## Allstate Insurance-National Catastrophe Team

Adjustor
CALEB YEAGER PLT
Phone
Fax:

P.O. Box 94054
Palatine, IL 60094
Phone (800) 547-8676 Fax (888) 859-3946

April 10, 2008

Insured Name LAREY, TONI
Loss Address 1902 ROBERTS, TEXARKANA, AR 718547650
Phone Number (870) 774-0316
Other Phone
Ins Company ALLSTATE PROPERTY AND CASUALTY INSURANCE COMP
Policy # 000921273205
Ins Claim # 000109259192
Catastrophe # 0331200804
Date of Loss 3/31/2008

## AA - Dwelling

### AA - Dwelling (Main Coverage)

| | Repl. Cost | Depr. | ACV |
|---|---|---|---|
| Estimate Totals | $4,405.39 | $567.51 | $3,837.88 |
| Contractor's Overhead & Profit (24%) | $1,057.29 | $136.20 | $921.09 |
| Total With Overhead & Profit | $5,462.68 | $703.71 | $4,758.97 |
| Sales Tax 8.50% | $306.94 | $42.50 | $264.44 |
| Total With Tax | $5,769.62 | $746.21 | $5,023.41 |
| Less Deductible Applied | ($500.00) | | ($500.00) |
| AA - Dwelling (Main) Claim | $5,269.62 | $746.21 | $4,523.41 |

patio cover, gutter down spouts + fascia

### AA - ROOF (Sub-Coverage)

| | Repl. Cost | Depr. | ACV |
|---|---|---|---|
| Estimate Totals | $3,712.14 | $1,518.81 | $2,193.33 |
| Contractor's Overhead & Profit (24%) | $890.91 | $364.51 | $526.40 |
| Total With Overhead & Profit | $4,603.05 | $1,883.32 | $2,719.73 |
| Sales Tax 8.50% | $184.95 | $83.51 | $101.44 |
| Total With Tax | $4,788.00 | $1,966.83 | $2,821.17 |
| Less Deductible Applied | $0.00 | | $0.00 |
| AA - ROOF Claim | $4,788.00 | $1,966.83 | $2,821.17 |

Roof

## AA - Dwelling (Consolidated)

| | Repl. Cost | Depr. | ACV |
|---|---|---|---|
| Estimate Totals | $8,117.53 | $2,086.32 | $6,031.21 |
| Contractor's Overhead & Profit (24%) | $1,948.20 | $500.71 | $1,447.49 |
| Total With Overhead & Profit | $10,065.73 | $2,587.03 | $7,478.70 |
| Sales Tax 8.50% | $491.89 | $126.01 | $365.88 |
| Total With Tax | $10,557.62 | $2,713.04 | $7,844.58 |
| Less Deductible Applied | ($500.00) | | ($500.00) |
| AA - Dwelling (Consolidated) Claim | $10,057.62 | $2,713.04 | $7,344.58 |

## Appurt Structures

## Appurt Structures (Main Coverage)

| | Repl. Cost | Depr. | ACV |
|---|---|---|---|
| Estimate Totals | $83.00 | $16.42 | $66.58 |
| Contractor's Overhead & Profit (24%) | $19.92 | $3.94 | $15.98 |
| Total With Overhead & Profit | $102.92 | $20.36 | $82.56 |
| Sales Tax 8.50% | $4.67 | $1.23 | $3.44 |
| Total With Tax | $107.59 | $21.59 | $86.00 |
| Less Non-Recoverable Depreciation | ($21.59) | ($21.59) | |
| Sub-Total | $86.00 | $0.00 | $86.00 |
| Less Deductible Applied | $0.00 | | $0.00 |
| Appurt Structures (Main) Claim | $86.00 | $0.00 | $86.00 |

## Appurt Structures ROOF (Sub-Coverage)

| | Repl. Cost | Depr. | ACV |
|---|---|---|---|
| Estimate Totals | $4,592.77 | $3,079.76 | $1,513.01 |
| Contractor's Overhead & Profit (24%) | $1,102.26 | $739.14 | $363.12 |
| Total With Overhead & Profit | $5,695.03 | $3,818.90 | $1,876.13 |
| Sales Tax 8.50% | $243.69 | $182.49 | $61.20 |
| Total With Tax | $5,938.72 | $4,001.39 | $1,937.33 |
| Less Deductible Applied | $0.00 | | $0.00 |
| Appurt Structures ROOF Claim | $5,938.72 | $4,001.39 | $1,937.33 |

## Appurt Structures (Consolidated)

| | Repl. Cost | Depr. | ACV |
|---|---|---|---|
| Estimate Totals | $4,675.77 | $3,096.18 | $1,579.59 |
| Contractor's Overhead & Profit (24%) | $1,122.18 | $743.08 | $379.10 |
| Total With Overhead & Profit | $5,797.95 | $3,839.26 | $1,958.69 |
| Sales Tax 8.50% | $248.36 | $183.72 | $64.64 |
| Total With Tax | $6,046.31 | $4,022.98 | $2,023.33 |
| Less Non-Recoverable Depreciation | ($21.59) | ($21.59) | |
| Sub-Total | $6,024.72 | $4,001.39 | $2,023.33 |
| Less Deductible Applied | $0.00 | | $0.00 |
| Appurt Structures (Consolidated) Claim | $6,024.72 | $4,001.39 | $2,023.33 |

## Summary: Claim # 000109259192

| | Repl. Cost | Depr. | ACV |
|---|---|---|---|
| Estimate Totals | $12,793.30 | $5,182.50 | $7,610.80 |
| Contractor's Overhead & Profit (24%) | $3,070.38 | $1,243.79 | $1,826.59 |
| Total With Overhead & Profit | $15,863.68 | $6,426.29 | $9,437.39 |
| Sales Tax 8.50% | $740.25 | $309.73 | $430.52 |
| Total With Tax | $16,603.93 | $6,736.02 | $9,867.91 |
| Less Non-Recoverable Depreciation | ($21.59) | ($21.59) | |
| Sub-Total | $16,582.34 | $6,714.43 | $9,867.91 |
| Less Deductible Applied ($500.00 Maximum) | ($500.00) | | ($500.00) |
| Net Claim | $16,082.34 | $6,714.43 | $9,367.91 |

Total Payment = 2nd check + 1st check (6-10)

Items noted as such by the Price Database Legend at the bottom of this estimate were based on material pricing provided by and available at large building material suppliers in your local market. It should be noted that prices can change without notice. Allstate will honor this estimate and work with you to resolve your claim regardless of where you purchase your materials and services. If you find the cost of repairs or replacement is more than reflected in this estimate, please contact your claim adjuster at the number listed above.

PLEASE NOTE: "Actual Cash Value is defined as the amount it would take to repair or replace damage to your property less depreciation. Depreciation, when applied in this estimate, is the decrease of the property's value due to age, wear and tear (condition) or obsolescence, except where otherwise noted."

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.