IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

MICHAEL LAREY and
TONI LAREY, et al.,                                                                                    PLAINTIFFS

v.                                         Case No. 4:14-cv-04008

ALLSTATE PROPERTY AND
CASUALTY COMPANY                                                                              DEFENDANT

**ORDER**

Currently before the Court is Defendant's Motion to Dismiss. (ECF No. 17). Plaintiffs Michael Larey and Toni Larey have responded. (ECF No. 21). Defendant Allstate Property and Casualty Company ("AP&C") filed a reply to Plaintiffs' response. (ECF No. 29). The Court finds this matter ripe for consideration.

Defendant moves to dismiss some of the claims pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction because the Plaintiffs do not have standing. AP&C also moves to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). For reasons reflected herein, Defendant's Motion to Dismiss (ECF No. 17) is GRANTED in part and DENIED in part.

I. Background

Plaintiffs' Second Amended Class Action Complaint, brought individually and on behalf of a class of individuals, alleged breach of contract and unjust enrichment against the Defendant. The named Plaintiffs allege two specific instances, one in 2008 and one in 2011. Plaintiffs allege that on or about March 31, 2008, their home, insured under a homeowners policy issued by AP&C, sustained damage for which they made a claim to AP&C and received actual cash value for their

claim on or about April 14, 2008. Plaintiffs also allege that on or about February 4, 2011, an additional property owned only by Plaintiff Michael Larey, insured under a different AP&C homeowners policy, sustained damage for which Mr. Larey made a claim. In both instances, AP&C estimated the cost to repair the property, which included the cost of labor and materials. AP&C paid the Plaintiffs the "actual cash value" of their loss, after subtracting depreciation and the amount of the deductible. The depreciated amount included both the cost of labor and materials. Plaintiffs filed suit in Miller County, Arkansas on November 22, 2013. The Plaintiffs, in their Second Amended Complaint, argue that Arkansas law prohibits an insurance company from depreciating the cost of labor. Therefore, by depreciating this cost, Plaintiffs claim that AP&C (1) breached their contract with Plaintiffs and (2) were unjustly enriched for both the 2008 and 2011 claims.

The Defendant asserts that the contract and unjust enrichment claims arising in 2008 are barred by a settlement in a previous case, res judicata, and applicable statutes of limitations. They assert the unjust enrichment claims from both 2008 and 2011 should be dismissed due to the existence of a valid contract. Defendant has not moved to dismiss Plaintiffs' 2011 breach of contract claim.

## II.  Standard

"In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). When ruling on a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim, the Court must take as true the alleged facts and

determine whether they are sufficient to raise more than a speculative right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). In deciding a Rule 12(b)(6) motion, courts are required to accept all of the Complaint's well-pled allegations as true and resolve all inferences in the Plaintiffs' favor. *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 933 n.4 (8th Cir. 2012). The issue in considering such a motion is not whether the Plaintiffs will ultimately prevail, but whether the Plaintiffs are entitled to present evidence in support of the claim. *See Nusku v. Williams*, 490 U.S. 319, 327 (1989).

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court is "not precluded in [its] review of the complaint from taking notice of items in the public record" or considering documents that do not contradict the complaint. *Papasan v. Allain*, 478 U.S. 265, 269 n.1 (1986); *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003); *Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1107 (8th Cir. 1999). All documents submitted to the court are either matters of public record or do not contradict the Plaintiffs' Second Amended Complaint, so the Court will review the current motion under Federal Rule of Civil Procedure 12(b)(6) standards. *Compare BJC Health Sys. v. Columbia Cas. Co.*, 348 F.3d 685, 687-88 (8th Cir. 2003) (district court erred in relying on matters outside the pleading that were not public documents). Moreover, Defendant's argument that the Plaintiffs lack standing is a question of jurisdiction. Because jurisdiction is a threshold question, the court may look outside the pleadings in order to determine whether subject matter jurisdiction exists. *Osborn v. United States*, 918 F.2d 724, 728-30 (8th Cir. 1990).

III.  Discussion

A.  *Feely* Settlement

First, Defendant argues the Plaintiffs claims from 2008 have been released by a settlement agreement in an earlier case, *Feely v. Allstate County Mutual Insurance Company, et al.*, Case No. CV-2004-294-3A (Ark. Cir. Ct. 2004), and the claims should therefore be dismissed because the Plaintiffs lack standing.  The *Feely* class action was filed in Miller County, Arkansas before Judge Kirk Johnson.  The Plaintiffs alleged that certain Allstate Defendants, including AP&C, improperly underpaid homeowners structural loss claims by failing to properly pay for General Contractor's Overhead and Profit ("GCOP") from September 6, 1996 through December 6, 2010.  The parties negotiated a settlement to end the litigation, and in exchange for consideration, the Allstate Defendants, including AP&C, obtained a release from all members of the *Feely* class for "Released Claims," defined as follows:

> [A]ny and all known and Unknown Claims, rights, demands, actions, causes of action, allegations, or suits of whatever kind or nature . . . arising from or in any way related to any acts which have been alleged or which could have been alleged in the Action by the Plaintiffs for a Covered Loss; on behalf of themselves or on behalf of the Settlement Class, to the full extent of res judicata protections, and whether arising under or based on contract, extra-contractual or tort theories, common law or equity, or federal, state or local law, statute, ordinance, rule or regulation, and/or arising from or in any way related to any omission, diminution, depreciation, inclusion, deduction, determination, modification and/or calculation of any form or manner of General Contractor's Overhead and Profit in the adjustment and/or payment of any Covered Loss by Allstate and/or any alleged conspiracy in connection therewith, provided, however, that the Released Claims do not include any claim for enforcement of this Stipulation and/or the Final Judgment.

The Final Judgment further states: "Upon the entry of this Final Judgment, each Class  Member, acting individually or together, shall not and shall not seek to institute, maintain, prosecute, sue, assert or cooperate in any action or proceeding against any of the Released Persons for any of the

Released Claims."

Plaintiffs first reply that this Court is without jurisdiction to interpret and enforce the prior settlement because Judge Johnson retained all jurisdiction to interpret the terms of the settlement. The Court disagrees and finds that it has jurisdiction to interpret the Release as it relates to the present action. In the Final Order, Judge Johnson expressly "retain[ed] continuing jurisdiction" over the action for the purposes of "[e]nforcing the Stipulation and the Proposed Settlement;" "[h]earing and determining any application by any party to the Stipulation for a settlement bar order;" and "[a]ny other matters related or ancillary to the foregoing." (ECF No. 18, Ex. 1, ¶ 24). While the cases cited by the Plaintiffs, *Thompson v. Edward D. Jones & Co.*, 992 F.2d 187, 189 (8th Cir. 1993); *In re Y & A Group Securities Litigation*, 38 F.3d 380, 383 (8th Cir. 1994); and *Picon v. Morris*, 933 F.2d 660, 662-63 (8th Cir. 1991), stand for the proposition that when a court issues an injunction, it automatically retains jurisdiction to enforce it, this is not an action to enforce the settlement and final judgment of the *Feely* Court. Instead, the Defendant is using the release as a defense, which was expressly permitted by the language of the Stipulation of Settlement, incorporated as part of the Final Judgment: "To the extent permitted by law, this Stipulation may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit or other proceeding which may be instituted, prosecuted or attempted in breach of this Stipulation." A court does not usually "get to dictate to other courts the preclusion consequences of its own judgment." 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4405, p. 82 (2d ed.2002)). Here, the state court retains jurisdiction to enforce the *Feely* settlement, but this Court is not deprived

of jurisdiction to apply its terms and preclusion consequences.[1]

Plaintiffs do not deny that they were members of the *Feely* class, but instead argue that the settlement language is not broad enough to cover the causes of actions alleged herein. "There is of course no dispute that under elementary principles of prior adjudication a judgment in a properly entertained class action is binding on class members in any subsequent litigation." *Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 874 (1984).

When a settlement agreement containing a release is unambiguous in its terms, it is the duty of the court to interpret the release. *Pine Bluff, S. & S. Ry. Co. v. Leatherwood*, 117 Ark. 524, 175 S.W. 1184 (1915). Under Arkansas law, settlement agreements are treated as contracts. *See Williams v. Davis*, 9 Ark.App. 323, 659 S.W.2d 514, 515 (1983). "[T]he first rule of interpretation of a contract is to give to the language employed the meaning which the parties intended." *First Nat'l Bank of Crossett v. Griffin*, 310 Ark. 164, 832 S.W.2d 816, 819 (1992). "When contracting parties express their intention in a written instrument in clear and unambiguous language, it is our duty to construe the written agreement according to the plain meaning of the language employed." *C. & A. Constr. Co. v. Benning Constr. Co.*, 256 Ark. 621, 509 S.W.2d 302, 303 (1974).

The Court finds that the named Plaintiffs have released their 2008 claims against AP&C because the claims could have been brought in the *Feely* action. *See Thompson*, 992 F.2d at 192 (holding that class settlement barred plaintiffs individual claims: "As a class member who chose not to opt out after notice of the terms of the settlement, [litigant] is bound by the Order and Final

---

[1] Plaintiffs also request that this Court deny AP&C' motion to dismiss without prejudice, pending the resolution of the Plaintiffs' Petition for Declaratory Judgment which is currently before Judge Johnson in Miller County, Arkansas. Because this Court finds that it is capable of interpreting the language of the state court settlement, that request is denied.

Judgment in the Arkansas [class action] and must abide by its express terms"). The language from the *Feely* settlement releases all known and unknown claims "arising from or in any way related to *any acts . . . which could have been alleged* in the Action by the Plaintiffs for a covered loss." Giving the words their plain meaning, this language is "broad and all encompassing," and applies to the current action. *See Grant Cnty. Sav. & Loan Ass'n, Sheridan, Ark. v. Resolution Trust Corp.*, 968 F.2d 722, 725 (8th Cir. 1992). Plaintiffs argue that the present claims are not related to the GCOP and are thus not covered. However, the language of the release does not require such a relationship. Instead, its broad language covers claims: (1)"which could have been alleged," (2) *"and/or* [those claims] arising from or in any way related to . . . General Contractor's Overhead and Profit." By utilizing the conjunction "or," the release indicates that there are alternative possibilities. Because language of the release does not require released claims to arise from the GCOP but is instead written more broadly, the Court disagrees with Plaintiffs that only claims based on the GCOP are released. Reading the release language as narrowly as the Plaintiffs advocate would render the language "to the full extent of res judicata protections" meaningless, as under the typical res judicata analysis, claims that could have been raised at the time, whether or not they were related to the specific allegation in that suit, are precluded on a subsequent review. *See Mayle v. Felix*, 545 U.S. 644, 673 (2005).

The *Feely* Complaint alleged that AP&C underpaid structural loss claims in Arkansas by improperly paying GCOP between September 6, 1996 and December 6, 2010. Plaintiffs here allege that AP&C underpaid structural loss claims because they depreciated labor costs on or about April 14, 2008. The Plaintiffs have alleged that the Defendant's "custom and practice" "[a]t all times relevant hereto" has been to unlawfully depreciate the labor costs. Therefore, at the time of the prior

7

settlement, the Defendant was allegedly unlawfully depreciating labor costs, and claims challenging labor depreciation could have been alleged by a member of the class at that time. *See Thompson*, 992 F.2d at 190 (court rejecting appellant's argument that settlement did not cover claims because her claims were individual in nature, noting that there is "no exception for those individual claims a class member could have brought at the time if the class member had chosen to opt out of the class prior to settlement").

Thus, Plaintiffs' 2008 claims are barred by the prior settlement release. These agreements demand the full respect and recognition of this Court and the parties bound thereunder. The settlement agreement language in *Feely* embodies a sweeping and encompassing release. Defendants are entitled to the sense of peace and finality they sought by entering into the settlement agreements. Accordingly, the prior settlement agreements render Plaintiffs' 2008 contract and unjust enrichment claims, which could have been alleged at the prior time, non-actionable. Plaintiffs' claims for damages resulting from alleged losses incurred before December 6, 2010 are dismissed.

### B. Res Judicata

The law of the forum that rendered the first judgment—in this case, Arkansas—governs the application of res judicata. *Laase v. Cnty. of Isanti*, 638 F.3d 853, 856 (8th Cir. 2011). Under Arkansas law, res judicata applies when there is (1) a final judgment on the merits, (2) entered by a court of competent jurisdiction, (3) between the same parties or privies, (4) regarding a claim that was actually raised or could have been raised in the prior action. *Parker v. Perry*, 355 Ark. 97, 104, 131 S.W.3d 338, 343-44 (2003). There is no dispute that the settlement was a final judgment on the merits, the Miller County Court was a court of competent jurisdiction, and the same parties were

involved. Based on the discussion, *supra*, the Court also holds that the claims here could have been raised in the prior action. *See Mayle*, 545 U.S. at 673 ("'[T]he claim extinguished includes all rights … with respect to all or any part of the transaction … out of which the action arose'"); *Equitable Life. Assur. Soc. of U.S. v. Pool*, 200 Ark. 1108, 143 S.W.2d 25, 27 (1940) (res judicata "precludes again litigating issues that were or might have been litigated between the same parties growing out of the same contract").

In class actions, more than the usual requirements of res judicata, as applied in the traditional lawsuit between or among individuals, must be met. *See In re Gen. Am. Life Ins.*, 357 F.3d at 803. Among other things, a class member cannot be bound unless she/he has received due process. *Thompson*, 992 F.2d at 190. The most important element of due process is adequate notice. *Carwell Elevator Co. v. Leathers*, 352 Ark. 381, 390-91, 101 S.W.3d 211, 218 (2003) (res judicata cannot attach where there is a "lack of notice").

Plaintiffs argue that they have been denied due process because there was no notice that this type of claim would be released. Due process requires that "[t]he means employed [to give notice] . . . be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Mullane v. Cent. Hannover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). "Class members are not expected to rely upon the notices as a complete source of settlement information," because "[a]ny ambiguities regarding the substantive aspects of the settlement could be cleared up by obtaining a copy of the agreement." *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 122 (8th Cir. 1975) (internal citations omitted). In *Feely*, the notice sent to class members provided members with a link to a complete copy of the settlement. It also had a description of the opt-out procedure and a toll free number for questions. This was sufficient to provide class members with sufficient notice of the

settlement. *See In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*, 716 F.3d 1057, 1065 (8th Cir. 2013) ("The notice provided a link to the settlement website, a description of the opt out procedure, and a toll free number to pose questions to the claims administrator. The notice was neither confusing nor misleading as to the release of liability under the settlement agreement."). After examining the relevant documents, the Court holds that the Plaintiffs did receive proper notice as required under the standards of due process, could have opted out, and chose not to do so.

The Court finds that persons who were members of the *Feely* class and did not opt out, including the named Plaintiffs herein, are bound by the terms of that release and therefore precluded from bringing the breach of contract and unjust enrichment claims alleged in the current Second Amended Complaint that arose during the time period covered by the *Feely* settlement. Plaintiffs' claims for damages resulting from alleged losses incurred before December 6, 2010 are dismissed as barred by res judicata.

### C.  Unjust Enrichment Count Arising from Contract

The Defendant next argues that the unjust enrichment counts arising from the 2008 and 2011 claims should be dismissed due to the existence of a valid contract. The doctrine of unjust enrichment does not apply when there is a valid, legal, and binding contract. *Hall Contracting Corp. v. Entergy Services, Inc.*, 309 F.3d 468, 475 (8th Cir. 2002); *Lowell Perkins Agency, Inc. v. Jacobs*, 469 S.W.2d 89, 92-93 (Ark. 1971). However, at this stage of the litigation, the Plaintiffs may state their case on alternative theories and cannot be required to make an election at this time. Should, for whatever reason, one of their theories not proceed, the Plaintiffs should be able to proceed on an alternative theory. Thus, while the 2008 claim fails for other reasons, the 2011 unjust enrichment

claim does not fail at this stage of the litigation because it is pled as an alternative theory.

Therefore, the Defendant's Motion to Dismiss the unjust enrichment claims arising out of a 2011 occurrence should be denied.

### D.  Statutes of Limitations

Alternatively, AP&C argues that the Plaintiffs' 2008 claims are time barred and therefore the same should be dismissed.  "[W]hen it appears from the face of the complaint itself that the limitations period has run, a limitations defense may properly be asserted through a 12(b)(6) motion to dismiss."  *Wycoff v. Menke*, 773 F.2d 983, 984-85 (8th Cir. 1985) (quotation omitted).  Here, the alleged breach occurred when AP&C paid the actual cash value for the claim, on or about April 14, 2008.  Plaintiffs filed their original Complaint in Miller County, Arkansas over five years later on November 22, 2013, which means that absent tolling, the 2008 breach of contract and unjust enrichment claims are barred.

This is a case where it is plain from the face of the complaint that the action is time barred unless Plaintiffs can plead and prove a basis for tolling the limitations period.  Because this case arises under diversity jurisdiction, the Court applies Arkansas tolling law and federal procedural law. *Great Plains Trust Co. v. Union Pac. R.R. Co.*, 492 F.3d 986, 995 (8th Cir. 2007).  Under Arkansas law, a breach of contract claim arising out of a written contract is subject to a five-year statute of limitations.  Ark. Code. Ann. § 16-56-111(b); *Chalmers v. Toyota Motor Sales, USA Inc.*, 935 S.W.2d 258, 261 (Ark. 1996).  Unjust enrichment carries a three-year statute of limitations. Ark. Code. Ann. § 16-56-105.  These statutes begin running on the date the breach or injury occurs, not when it is discovered, unless the limitations period is tolled.  *Chalmers*, 326 Ark. at 901.

The applicable statutes of limitations may be tolled on the basis of fraudulent concealment. Once it is clear from the face of the complaint that an action is barred by an applicable statute of limitations, the burden shifts to the Plaintiffs to prove that the limitation period was in fact tolled. *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880-81 (8th Cir. 2011) (citing *Paine v. Jefferson Nat'l Life Ins. Co.*, 594 F.3d 989, 992 (8th Cir. 2010) (applying Arkansas law)). The Plaintiffs' burden here is preponderance of the evidence. *First Pyramid Life Ins. Co. of Am. v. Stoltz*, 311 Ark. 313, 317-18, 843 S.W.2d 842, 844 (1992). In order to toll a limitation period on the basis of fraudulent concealment, there must be: "(1) a positive act of fraud (2) that is actively concealed, and (3) is not discoverable by reasonable diligence." *Paine*, 594 F.3d at 992 (quotation omitted).

This Court finds that the Lareys have not shown by a preponderance of the evidence that AP&C's failure to disclose the Plaintiffs' rights under Arkansas law is the type of "affirmative and fraudulent act[] of concealment" required to toll statutes of limitations in Arkansas. The "classic language on point" in Arkansas regarding fraud sufficient to toll the statute of limitations is as follows:

> No mere ignorance on the part of the plaintiff of his rights, nor the mere silence of one who is under no obligation to speak, will prevent the statute bar. There must be some positive act of fraud, something so furtively planned and secretly executed as to keep the plaintiff's cause of action concealed or perpetrated in a way that it conceals itself.

*First Pyramid*, 311 Ark. at 319, 843 S.W.2d at 845 (quoting *Wilson v. GECAL*, 311 Ark. 84, 841 S.W.2d 619 (1992) (citations omitted)). While Plaintiffs have pled that AP&C's actions were dishonest, there is no allegation in the Second Amended Complaint of anything that was so "furtively planned and secretly executed" that would prevent the Plaintiffs from discovering the cause of action

within the limitations period because it was "perpetrated in a way that it conceals itself." Therefore, the Plaintiffs fail to show by a preponderance of the evidence that their allegations rise to the level of fraud required to toll the statute of limitations in Arkansas.

Alternatively, Plaintiffs' allegations are insufficient to toll the statue of limitations because they fail to allege when and how the fraud was discovered. "Fraud suspends the running of the statute of limitations . . . until the party having the cause of action discovers the fraud or should have discovered it by the exercise of reasonable diligence." *Martin v. Arthur*, 3 S.W.3d 684, 687 (Ark. 1999) (quotation omitted). Part of the Plaintiffs' burden is to show that they could not, with the exercise of reasonable diligence, have discovered the alleged unlawful conduct earlier, as well as affirmatively plead when and how the fraud was discovered. *See Summerhill*, 637 F.3d at 880-81 (citing *Wood v. Carpenter*, 101 U.S. 135, 140-41 (1879) ("If the plaintiff made any particular discovery, it should be stated when it was made, what it was, how it was made, and why it was not made sooner. . . . The circumstances of the discovery must be fully stated and proved, and the delay which has occurred must be shown to be consistent with the requisite diligence.")).

Plaintiffs' conclusory allegation that "[b]ecause of Defendant's actions, Plaintiffs and other Class Members could not have known they had been underpaid on their claims through the exercise of due diligence" does not reveal why they could not discover the fraud, when it was discovered, or the manner by which it was discovered. There is no demonstration of why the exercise of diligence would not have revealed the fraud within the limitations period. In fact, Plaintiffs allege that it is consistent with "longstanding legal principles[] that materials are subject to depreciation while labor is not." (ECF No. 5 ¶23). Additionally, by failing to allege when and how they discovered AP&C's alleged fraud, Plaintiffs have failed to plead sufficient facts to demonstrate that fraudulent

13

concealment would toll the time period sufficiently to save their otherwise time-barred claims. *See Summerhill*, 637 F.3d at 880-81; 51 Am. Jur.2d Limitation of Actions § 184 ("One may not avoid the effect of the statute of limitations on the ground of fraudulent concealment if he or she fails to plead or offer evidence as to when he or she discovered the alleged fraud.").

The Court finds that, alternatively, the 2008 claims are barred by the applicable statutes of limitations and should be dismissed.

IV. Conclusion

Defendant's Motion to Dismiss all claims arising in 2008 is hereby GRANTED because the claims were released in a prior settlement agreement and are thus barred by res judicata. Alternatively, the claims arising in 2008 are barred by the applicable statutes of limitations. Defendant's Motion to Dismiss Plaintiffs unjust enrichment claims arising in 2011 is hereby DENIED.

**IT IS SO ORDERED**, this 26th day of September, 2014.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge